IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| MANITOU AMERICA HOLDING, INC. | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 20-931 |
| | § | |
| CAFFEY ENTEPRISES, INC. AND | § | |
| JOHN DOES 1 – 10, | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF, MANITOU AMERICA HOLDING, INC.'S ORIGINAL COMPLAINT

Plaintiff, MANITOU AMERICA HOLDING, INC. ("MANITOU AMERICA") hereby sues CAFFEY ENTERPRISES, INC. ("CAFFEY"), a Texas Corporation, and John DOE DEFENDANTS 1 through 10 (collectively "DOES" and in combination with CAFFEY - "DEFENDANTS") and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for trademark counterfeiting and infringement, false designations of origin and false advertising pursuant to 15 U.S.C. §§ 1114, 1116, 1121, and 1125. Furthermore, this is an action where diversity of citizen exists and the amount in dispute exceeds $75,000.00. This action is further one for common law trademark infringement and unfair competition, and unjust enrichment under Texas law. Accordingly, this Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

2. Venue is proper in this Court pursuant 28 U.S.C. § 1391 since a substantial portion of the acts giving rise to this case occurred, or is occurring within this District and Division.

4814-1376-1229.1

## I.

## **THE PARTIES**

3. MANITOU AMERICA is a corporation duly organized under the laws of the State of Wisconsin.

4. MANITOU AMERICA is, in part, engaged in the business of manufacturing and distributing industrial equipment ("heavy equipment") throughout the world, including distribution and sales within this Judicial District and Division, under the federally registered trademark GEHL ("The GEHL Mark").

5. CAFFEY is a Texas Corporation that, upon information and belief, conducts business throughout the United States.

6. CAFFEY, upon information and belief, has conducted business in this District and Division, and/or has caused business and transactions related to this action to be so conducted.

7. CAFFEY, on information and belief, is headquartered in Harris County, Texas, with a registered agent for service of process being believed to be James M. Caffey, 1205 Indiana, South Houston, TX 77587.

8. Upon information and belief, CAFFEY is directly engaging in the creation and sale of counterfeit and infringing products within this District and Division as alleged herein.

9. CAFFEY is directly contributing, inducing and engaging in the sale of counterfeit products as alleged herein in concert with DOES 1 through 10.

10. MANITOU AMERICA is presently unaware of the true names of DOES 1 through 10. MANITOU AMERICA will amend this Complaint upon discovery of the identities of such fictitious DOE DEFENDANTS.

11.     At least one of DOES 1 through 10 is a business entity which, upon information and belief, resides and/or conducts business within this Judicial District. Moreover, DOES 1 through 10 are, upon information and belief, directly engaging in the sale of counterfeit products as alleged herein as partners of or purchasers directly from CAFFEY.

II.

**COMMON FACTUAL ALLEGATIONS**

A.     <u>The GEHL Mark</u>.

12.     MANITOU AMERICA is the owner of the GEHL Mark, which is protected by the following incontestable United States Federal Trademark Registration:

| **GEHL** | |
|---|---|
| **Goods and Services** | IC 007. US 023. G & S: articulated loaders, asphalt rolling machines, concrete curbing machines, graders, disc mowing machines, grinder mixer machines, mini excavation machines, paving machines, road grading and maintaining machines, skid steer loading machines and attachments therfor, chopping and spreading machines windrow merging machines, machine parts, bar rakes, cold planers, compaction plates, compaction rollers, feeder wagons, fingerwheels, hay tedders, parallel bar rakes, rectangular balers, rotary rakes, round balers, running gears. FIRST USE: 19740831. FIRST USE IN COMMERCE: 19740831 |
| | IC 012. US 019. G & S: forklift trucks with reach equipment parts, and straight mast rough terrain forklift trucks. FIRST USE: 19740831. FIRST USE IN COMMERCE: 19740831 |
| **Serial Number** | 74223588 |
| **Filing Date** | November 20, 1991 |
| **Registration Number** | 1744276 |
| **Registration Date** | January 5, 1993 |

13. Exhibit 1 hereto is a true and correct copy of the USPTO record of the U.S. Registration No. 1744276. MANITOU AMERICA is the current owner of record in the United States Patent and Trademark Office for U.S. Registration No. 1744276.

14. The GEHL Mark is registered in International Classes 007 and 012 and is used in connection with the manufacture and distribution of, among other things, each of the listed goods set forth in the above Federal Trademark Registration.

15. The GEHL Mark has been used in interstate commerce to identify and distinguish MANITOU AMERICA's high quality equipment and other products for an extended period of time.

16. The GEHL Mark has never been assigned or licensed to any of the DEFENDANTS in this matter.

17. The GEHL Mark is a symbol of MANITOU AMERICA's quality, reputation, and goodwill and has never been abandoned.

18. MANITOU AMERICA has extensively used, advertised, and promoted the GEHL Mark in the United States in association with the sale of high quality heavy equipment and other goods and has carefully monitored and policed the use of the GEHL Mark.

19. As a result of MANITOU AMERICA's efforts, members of the relevant consuming public readily identify equipment and related products bearing the GEHL Mark as being of high quality and sponsored and approved by MANITOU AMERICA.

20. Accordingly, only to the extent that the GEHL Mark might be found in any manner to be descriptive, such Mark has developed secondary meaning as identifiers of high quality heavy equipment.

21. Upon information and belief, at all times relevant hereto, the DEFENDANTS in this action had full knowledge of MANITOU AMERICA's ownership of the GEHL Mark, including its exclusive right to use and license the GEHL Mark and the goodwill associated therewith.

B. Background of Relevant Products.

22. During or about November of 2019, a number of GEHL Mark-branded heavy equipment products were submerged in a flood in South Dakota.

23. MANITOU AMERICA's insurance carrier arranged for a liquidation sale of such flood-damaged equipment, which was subsequently sold by a contracted liquidator to CAFFEY.

24. Before delivery of the flood-damaged equipment to CAFFEY, and as a measure to protect MANITOU AMERICA's goodwill and the integrity of its GEHL Mark, MANITOU AMERICA removed all brands (including the GEHL Mark), as well portions of the VIN numbers, from the equipment.

25. Before, and as a condition of delivery of the flood-damaged equipment to CAFFEY, CAFFEY agreed in a written contract to not sell any of the flood-damaged equipment in the United States and that MANITOU AMERICA's brands would be removed (though they already had by the time of delivery to CAFFEY).

C. DEFENDANTS' Counterfeiting and Infringement.

22. MANITOU AMERICA has discovered that, since delivery of the flood-damaged equipment to CAFFEY, on information and belief, either CAFFEY or someone acting in concert with CAFFEY, is selling and offering for sale the flood-damaged equipment within the United States, and within this Judicial District and Division.

23. MANITOU AMERICA has further discovered that, since delivery of the flood-damaged equipment to CAFFEY, on information and belief, either CAFFEY or someone acting at CAFFEY'S behest, has created from the flood-damaged equipment counterfeit products by applying to the flood-damaged equipment exact or effectively indistinguishable labels from those of MANITOU AMERICA that bear or constitute the GEHL Mark (the "Counterfeit Goods"). Exhibit 2 hereto is a true and correct copy of a page of a website depicting one of the Counterfeit Goods, and used to market such Counterfeit Goods that, on information and belief, are at least supplied by CAFFEY to the website sponsor.

24. Further still, on information and belief, either CAFFEY or someone acting at CAFFEY'S behest, has even gone so far as re-applying the previously removed portions of VIN numbers to the flood-damaged equipment, in an apparent further and fraudulent attempt to pass off the damaged equipment as those sponsored, approved, and supported by MANITOU AMERICA while having direct personal knowledge that such representation would be false.

25. CAFFEY has been directly notified of the MANITOU AMERICA's objection to CAFFEY'S activities as described above, and has, on information and belief, responded with threats of one or more lawsuits "if anyone interferes with these sales" (or words to that effect).

D. <u>Existing Damage and Future Risks to MANITOU AMERICA</u>

26. In ways not yet fully determined, MANITOU AMERICA has already suffered irreparable trademark-related, reputational injury, by virtue of Counterfeit Goods having already been sold to unsuspecting customers.

27. Unless immediately enjoined, MANITOU AMERICA risks suffering further, additional irreparable harm upon the sale of each and every additional Counterfeit Goods by DEFENDANTS or any of them.

28. In addition to trademark-related, reputational injury suffered by any trademark owner through counterfeiting or other forms of trademark infringement, in this case MANITOU AMERICA also faces the reasonably anticipated, further injury of needing to address (at considerable likely expense) warranty and possible other legal claims lodged by unsuspecting purchasers of the flood-damaged Counterfeit Goods who would reasonably be unaware of MANITOU AMERICA's dissociation from such products.

29. In fact, MANITOU AMERICA has already received at least one claim from one such defrauded purchaser of the Counterfeit Goods.

30. Upon information and belief, DEFENDANTS advertise their Counterfeit Goods for sale to the consuming public. In so advertising these products, DEFENDANTS use the GEHL Mark.

31. Upon information and belief, DEFENDANTS are conducting their counterfeiting and infringing activities at least within this Judicial District and Division and elsewhere throughout the United States. DEFENDANTS' infringement and disparagement of MANITOU AMERICA's trademark rights do not simply amount to the wrong description of their goods or the failure of the goods to conform to the advertised quality or performance. As a result, DEFENDANTS are defrauding MANITOU AMERICA and the consuming public for DEFENDANTS' own benefit.

32. DEFENDANTS' use of the GEHL Mark, including the promotion, advertising, distribution, sale and/or offering for sale of their Counterfeit Goods, is without MANITOU AMERICA's consent or authorization.

33. Further, upon information and belief, DEFENDANTS may be engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to MANITOU AMERICA's rights, for the purpose of trading on the goodwill and reputation of MANITOU AMERICA.

34. If DEFENDANTS' counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, MANITOU AMERICA and the consuming public will continue to be damaged.

35. DEFENDANTS' above-identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers, the public, and the trade. Moreover, DEFENDANTS' wrongful conduct is likely to create a false impression and deceive customers, the public and the trade into believing there is a connection or association between MANITOU AMERICA's genuine goods and DEFENDANTS' Counterfeit Goods.

36. MANITOU AMERICA has no adequate remedy at law.

37. MANITOU AMERICA is suffering irreparable injury and has suffered substantial damages as a result of DEFENDANTS' counterfeiting and infringing activities.

38. The injuries and damages sustained by MANITOU AMERICA are directly and proximately caused by DEFENDANTS' advertisement, promotion, distribution, sale and/or offering for sale of their Counterfeit Goods.

39. MANITOU AMERICA has retained the undersigned counsel to represent it in this matter and is obligated to pay said counsel a reasonable fee for such representation.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT

40. MANITOU AMERICA repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

41. This is an action for trademark counterfeiting and infringement against DEFENDANTS based on their promotion, advertisement, distribution, sale and/or offering for sale of the Counterfeit Goods bearing the GEHL Mark.

42. Specifically, DEFENDANTS, upon information and belief, are promoting and otherwise advertising, selling, offering for sale, and distributing at least counterfeit and infringing heavy equipment bearing the GEHL Mark.

43. DEFENDANTS are infringing and inducing others to infringe the GEHL Mark by using it to advertise, promote, and sell counterfeit heavy equipment.

44. DEFENDANTS' counterfeiting and infringing activities are likely to cause and, on information and belief, actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of DEFENDANTS' Counterfeit Goods bearing the GEHL Mark.

45. DEFENDANTS' unlawful actions have caused and are continuing to cause unquantifiable damages to MANITOU AMERICA.

46. DEFENDANTS' above-described illegal actions constitute counterfeiting and infringement of the GEHL Mark in violation of MANITOU AMERICA's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

47. MANITOU AMERICA has suffered and will continue to suffer irreparable injury due to the above-described activities of DEFENDANTS if DEFENDANTS are not temporarily restrained and preliminarily and permanently enjoined.

### COUNT II - FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING
### PURSUANT TO § 43(a) OF THE LANHAM ACT

48. MANITOU AMERICA repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

49. DEFENDANTS' Counterfeit Goods bearing the GEHL Mark have been widely advertised and distributed throughout the United States.

50. DEFENDANTS' Counterfeit Goods bearing the GEHL Mark, having been manufactured by MANITOU AMERICA, and after being re-branded by CAFFEY and/or any of the DOE DEFENDANTS with the GEHL Mark, and otherwise having been conditioned for sale, are virtually identical in appearance to each of MANITOU AMERICA's respective genuine goods.

51. However, the Counterfeit Goods, by virtue at least of the flood damage, as well as the lack of actual warranty or service coverage by MANITOU AMERICA, are fundamentally and substantially different in direct, physical quality, as well as related warranty and support related service-associated quality. Accordingly, DEFENDANTS' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of the Counterfeit Goods.

52. DEFENDANTS, upon information and belief, have used in connection with their sale of Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols, which tend to falsely describe or represent the nature, characteristics, and qualities of such goods, and upon information and belief, DEFENDANTS have

caused such goods to enter into commerce with knowledge of the falsity of such designations of origin and such descriptions and representations, all to the detriment of MANITOU AMERICA.

53. Specifically, DEFENDANTS, upon information and belief, have authorized an infringing use of the GEHL Mark, in DEFENDANTS' advertisement and promotion of their counterfeit and infringing heavy equipment. DEFENDANTS, upon information and belief, have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing products.

54. Exhibit 2 hereto is a true and correct copy of a page of a website depicting one of the Counterfeit Goods, and used to market such Counterfeit Goods that, on information and belief, are at least supplied by CAFFEY to the website sponsor.

55. DEFENDANTS' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56. MANITOU AMERICA has sustained injury and damage caused by DEFENDANTS' conduct, and absent an entry of an injunction by this Court, MANITOU AMERICA will continue to suffer irreparable injury to its goodwill and business reputation as well as monetary damages.

## COUNT III - COMMON LAW TRADEMARK INFRINGEMENT

57. MANITOU AMERICA hereby repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

58. This is an action for common law trademark infringement against DEFENDANTS based on their promotion, advertisement, sale and/or offering for sale of goods bearing marks which are virtually identical, both visually and phonetically, to the GEHL Mark in violation of MANITOU AMERICA's common law trademark rights.

59. Specifically, DEFENDANTS, upon information and belief, are promoting and otherwise advertising, selling, offering for sale, and distributing infringing heavy equipment bearing marks substantially similar to and indistinguishable from the GEHL Mark.

60. DEFENDANTS infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of DEFENDANTS' products by their use of the GEHL Mark.

61. As a result of the above described trademark infringement activities of DEFENDANTS, MANITOU AMERICA has suffered, and will continue to suffer, irreparable injury and substantial damages, and DEFENDANTS have been unjustly enriched.

**COUNT IV - UNFAIR COMPETITION UNDER TEXAS COMMON LAW**

61. MANITOU AMERICA repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

63. The foregoing acts of DEFENDANTS constitute unfair competition under the common law of the State of Texas. As a result of the unfair competition by DEFENDANTS, MANITOU AMERICA has suffered and will continue to suffer injury and damage in an amount yet to be determined. The acts of unfair competition have resulted in substantial unjust profits and unjust enrichment on the part of DEFENDANTS in an amount yet to be determined. Such acts of unfair competition in violation of Texas common law have caused great harm to MANITOU AMERICA, for which MANITOU AMERICA is entitled to recover any and all remedies provided by Texas common law.

64. DEFENDANTS' wrongful acts of unauthorized use of the GEHL Mark, in attempting to pass off their products as if they are MANITOU AMERICA products in a manner calculated to

deceive members of the trade and the general public, are likely to cause and are actually causing confusion, mistake, and deception among members of the trade and general consuming public as to the origin and quality of DEFENDANTS' products by their use of the GEHL Mark.

65. The natural, probable, and foreseeable consequences of DEFENDANTS' wrongful conduct has been and will continue to be the deprivation of the exclusive rights MANITOU AMERICA has in and to its intellectual property.

66. DEFENDANTS' wrongful acts of unauthorized use of the GEHL Mark have caused and will continue to cause MANITOU AMERICA substantial injury including loss of customers, dilution of its reputation, dilution of its goodwill, confusion of existing and potential customers, loss of its reputation, and diminution of the value of its intellectual property. The harm these wrongful acts cause to MANITOU AMERICA is both imminent and irreparable, and the amount of damage sustained by MANITOU AMERICA will grow even more difficult to ascertain if these acts continue.

67. As a result of the above-described wrongful activities of unfair competition by DEFENDANTS, MANITOU AMERICA has suffered, and will continue to suffer, irreparable injury and substantial damages, and DEFENDANTS have been unjustly enriched.

## COUNT V – UNJUST ENRICHMENT

68. MANITOU AMERICA repeats and realleges each and every paragraph set forth above as if fully set forth again at length herein.

69. DEFENDANTS' acts constitute unjust enrichment under the common law of the State of Texas.

70. By their conduct, DEFENDANTS have caused MANITOU AMERICA irreparable harm and injury and will continue to do so unless restrained and enjoined by the Court.

71. MANITOU AMERICA has no adequate remedy at law.

## JURY DEMAND

72. MANITOU AMERICA requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, MANITOU AMERICA demands judgment against DEFENDANTS, jointly and severally, and/or severally as prescribed by law and in view of facts determined by the fact finder as follows:

a. That the Court enter a Temporary Restraining Order, and after appropriate hearing(s) and trial respectively, Preliminary and Permanent Injunctions enjoining DEFENDANTS, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from

i. altering MANITOU AMERICA-manufactured products acquired without MANITOU AMERICA brand or brands by applying MANITOU AMERICA brand or brands;

ii. retaining any MANITOU AMERICA-manufactured products acquired without MANITOU AMERICA brand or brands to which have been applied MANITOU AMERICA brand or brands (including the GEHL Mark);

iii. publicly displaying, physically or digitally, any MANITOU AMERICA-manufactured products acquired without MANITOU AMERICA brand or products to which have been applied MANITOU AMERICA brand or brands (including the GEHL Mark);

iv. selling or offering for sale, any MANITOU AMERICA-manufactured products acquired without MANITOU AMERICA brand or brands to which have been applied MANITOU AMERICA brand or brands (including the GEHL Mark);

v. creating, displaying or using in any manner any item that bears, constitutes, or is a reproduction of any MANITOU AMERICA brand or brands (including the GEHL Mark) that has not been provided by MANITOU AMERICA in the context of a sale of MANITOU AMERICA-manufactured and branded products; and

vi. importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods;

vii. infringing, counterfeiting, or diluting the GEHL Mark;

viii. using the GEHL Mark, or any mark similar thereto, in connection with the sale of any unauthorized goods;

ix. using any logo, trade name, or trademark which may be calculated to falsely advertise the services or products of DEFENDANTS as being sponsored by, authorized by, endorsed by, or in any way associated with MANITOU AMERICA;

x. falsely representing themselves as being connected with MANITOU AMERICA, through sponsorship or association, or engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of DEFENDANTS are in any way endorsed by, approved by, and/or associated with MANITOU AMERICA; using any reproduction, counterfeit, copy, or colorable imitation of the GEHL Mark or any other MANITOU AMERICA mark in connection with the publicity, promotion, sale, or advertising of any goods sold by DEFENDANTS, including,

without limitation, heavy equipment or any other goods; affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent DEFENDANTS' goods as being those of MANITOU AMERICA, or in any way endorsed by MANITOU AMERICA; and

  xi. offering such goods in commerce; and from otherwise unfairly competing with MANITOU AMERICA.

 b. that DEFENDANTS each be directed to file with this Court and serve on MANITOU AMERICA respectively within thirty (30) days after service of such preliminary and permanent injunctions, a written report under oath pursuant to 15 U.S.C. § 1116 setting forth in detail the manner and form in which DEFENDANTS have complied with the injunction;

 c. that DEFENDANTS be required to account to and pay MANITOU AMERICA for all profits and damages resulting from DEFENDANTS' infringing and counterfeiting activities and that the award to MANITOU AMERICA be trebled, as provided for under 15 U.S.C. § 1117, or, at MANITOU AMERICA's election with respect to Count I, that MANITOU AMERICA be awarded statutory damages from each Defendant in the amount of two million ($2,000,000.00) dollars per each counterfeit GEHL Mark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

 d. that DEFENDANTS, jointly and severally, be adjudged to have unfairly competed with MANITOU in violation of Texas common law and that MANITOU accordingly be awarded such damages, enhanced damages, punitive damages, attorneys fees and injunctive relief to which it may be justly entitled thereunder;

e. that MANITOU AMERICA be awarded punitive damages for each cause of action set forth herein and for which the same are permissible by law or statute, and that otherwise represent a permissible recovery;

g. that MANITOU AMERICA be awarded pre-judgment interest on its judgment;

h. that MANITOU AMERICA be awarded at least treble damages as well as its costs and reasonable attorneys' fees and investigators' fees associated with bringing this action; and

i. that MANITOU AMERICA be awarded such other and further relief as the Court may deem just and proper.

DATED this 8th day of October 2020.

Respectfully submitted,

**GRAY REED & MCGRAW LP**

By: /s/ David G. Henry, Sr.
David G. Henry, Sr. – Lead Counsel
State Bar No. 09479355
DHenry@GrayReed.com
900 Washington Ave.
Suite 800
Waco, Texas 76701
-----------------------------------------
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
T: (254) 342-3000
F: (713) 986-7100
**ATTORNEYS FOR PLAINTIFF MANITOU AMERICA HOLDINGS, INC.**